(78 N. W. Rep. 77.)

O. S. PAULSON MERCANTILE COMPANY *vs.* W. K. SEAVER.

Opinion filed December 18, 1898.

### Evidence—Declarations—Estoppel.

> S. transferred certain personal property to P. by bill of sale. P., in same manner, transferred the same property to plaintiff. The defendant, as sheriff, and by virtue of a writ of attachment duly issued and placed in his hands for service, seized said property as the property of S. Plaintiff sued the sheriff in conversion. *Held*, that the declarations of S., made after the transfer to plaintiff, tending to defeat plaintiff's title, were improperly received in evidence against plaintiff's objections, in the absence of any proof of any combination between S., P., and plaintiff to defraud the creditors of S.

### Silence When Duty to Speak—Estoppel.

> Where such statements were made by S. in the presence of P., who was the president and general manager of plaintiff, and had possession and control of said property as such, and where such statements were made to an agent of the creditor of S., who subsequently sued out the attachment, that it was the duty of P., as such officer, to contradict such statements if untrue, and his remaining silent constituted an admission of the truth of such statements, and rendered them competent evidence against plaintiff.

### Declarations as to Title to Personal Property.

> When, at the same time and under the same circumstances, P. stated to such creditor's agent that S. was owner of said property, such statement became competent evidence against plaintiff.

Appeal from District Court, Traill County; *McConnell*, J.

Action by the O. S. Paulson Mercantile Company against W. K. Seaver as sheriff of Traill county, for the conversion of a stock of merchandise, held by the defendant under a seizure upon warrant of attachment in an action by L. A. Shakman & Company against one O. S. Sletto. The trial resulted in a verdict for defendant. From an order granting a new trial, defendant appeals.

Affirmed.

*Bangs & Guthrie,* for appellant.

The only error upon which a new trial was order by the lower court was the admission of evidence of statements made by Sletto and Paulson with reference to the ownership of the stock in question. These men were associated for the illegal purpose of defrauding Sletto's creditors, and the admissions of one of them during the

pendency of the unlawful enterprise and in furtherance of its objects, were competent against the other. 1 A. & E. Enc. L. (2nd Ed.) 711; *Underhill Ev.* 69; *Sundry Goods* v. *United States,* 7 L. Ed. 450; *Nudd* v. *Burrows,* 91 U. S. 426, 23 L. Ed. 286; *McKean* v. *Adams,* 32 N. Y. Supp. 281; *Guneberg* v. *Truesch,* 61 N. W. Rep. 872. The admissions made by duly authorized agents of corporations are looked upon as the admissions of the corporation. 2 Whart. Ev. 1170; *Toll Bridge Co.* v. *Bettsworth,* 30 Conn. 380; *Abbott* v. *Co.,* 25 Pac. Rep. 693; *Chicago, etc., Ry. Co.* v. *Coleman,* 68 Am. Dec. 544; *McGinness* v. *Adriatic Mills,* 116 Mass. 177; *Costigan* v. *Company,* 38 Mo. App. 218; *St. Louis Paint Mfg. Co.* v. *Mepham,* 30 Mo. App. 15; *Josephi* v. *Clothing Co.,* 33 Pac. Rep. 1. The declarations made by an officer or agent of a corporation in response to timely inquires relating to matters under his charge in respect to which he is authorized in the usual course of business to give information may be given in evidence against the corporation. *Bank* v. *Field,* 2 Hill 445; *Morse* v. *Ry. Co.,* 6 Gray 450; *Abbott's Trial Ev.* 44; *Xenia Bank* v. *Stewart,* 114 U. S. 224.

*McLaughlin & Boyesen,* for respondent.

There was no allegation of fraud, collusion or conspiracy in the answer and all evidence to prove either was inadmissible. *Frisbee* v. *Langworthy,* 11 Wis. 394. New matter constituting a defense must be plead. Subd. 2, § 4914 Rev. Codes. New matter is that which under the rules of evidence the defendant must affirmatively establish. If the onus of proof is thrown upon the defendant, the matter to be proved by him is new matter. *Percy* v. *Sabin,* 10 Cal. 22. Fraud is never presumed. It is an affirmative defense. *Glazer* v. *Clift,* 10 Cal. 304; *Mey* v. *Gulleman,* 105 Ill. 272. The facts constituting the fraud must be stated. Bliss on Code Pleading, § 211-239; *Ockenden* v. *Barnes,* 43 Ia. 619; *Finley* v. *Quirk,* 9 Minn. 194. It was neither alleged in the answer nor proved that L. A. Shakman & Company were creditors of O. S. Sletto. As between the parties the sale by Sletto to plaintiff was good against any but creditors of plaintiff's vendors at the time of the transfer. *Braley* v. *Byrnes,* 20 Minn. 435; *Hornberger* v. *Bradenberger,* 35 Minn. 401; *James* v. *Van Duyn,* 45 Wis. 512; *Daman* v. *Bryant,* 2 Pick. 411; *Hines* v. *Chambers,* 29 Minn. 7; *Williams* v. *McGrade,* 13 Minn. 46; *Howard* v. *Manderfield,* 31 Minn. 337; *Oberfelder* v. *Kavanaugh,* 32 N. W. Rep. 295; *Williams* v. *Eikenbury,* 41 N. W. Rep. 770; *Bartlett* v. *Cheesebrough,* 49 N. W. Rep. 360; *Paxton* v. *Moravek,* 47 N. W. Rep. 919. Declarations to third persons by a vendor of property after the sale and delivery thereof has been consummated are inadmissible against the vendee to impair the latter's title. *Orr* v. *Lindsay Shoe Co.,* 67 Fed. Rep. 990; *Zobel* v. *Bauersachs,* 75 N. W. Rep. 43. Such declarations are both irrelevant and hearsay. *Winchester, etc.* v. *Creary,* 116 U. S. 161; *Kurtz* v. *Ry. Co.,* 63 N. W. Rep. 1; *Milling* v. *Hillenbrand,* 40 N. E. Rep. 941; *Williams* v. *Eikenbury,* 41 N. W. Rep. 770;

*Howland* v. *Fuller,* 8 Minn. 50; *Zimmerman* v. *Lamb,* 7 Minn. 336; *Benson* v. *Lundy,* 3 N. W. Rep. 149; *Allen* v. *Kirk,* 47 N. W. Rep. 906; *Derby* v. *Gallup,* 5 Minn. 119; *Shaw* v. *Robertson,* 12 Minn. 445; *Groff* v. *Ramsey,* 19 Minn. 44; *Burt* v. *McKinstry,* 4 Minn. 204; *Buckingham* v. *Taylor,* 41 N. W. Rep. 868; *Fay* v. *Rankin,* 2 N. W. Rep. 562. Declarations of an agent of a corporation to bind the principal must be made within the scope of the agent's authority and must accompany the act or contract which he is authorized to do or make. Angel & Ames on Corp. §309; *Mundhenk* v. *Railway Co.,* 11 N. W. Rep. 657; *Verry* v. *Railway Co.,* 47 Ia. 549; *Sioux Valley State Bank* v. *Kellogg,* 46 N. W. Rep. 859; *Met. Nat. Bank* v. *Bank,* 74 N. W. Rep. 28.

BARTHOLOMEW, C. J. The plaintiff, the O. S. Paulson Mercantile Company, is a corporation. As such, it sues the defendant, Seaver, in conversion for the value of a certain stock of goods which was in a store building at Reynolds, in Traill county. It alleges that it was the owner of said stock, and that the defendant wrongfully seized and converted the same. The defendant, by answer, denies plaintiff's ownership and damages, and stated that, as sheriff of said Traill county, he seized said stock of merchandise under and by virtue of a writ of attachment duly issued out of the District Court of said county, and placed in his hands for service, in an action brought by A. L. Shakeman & Company against one O. S. Sletto to recover the value of certain merchandise sold by said Shakeman & Co. to said Sletto; that he seized said stock of goods as the property of said Sletto; and that he, the said Sletto, was in fact the owner of said stock of goods when the same was so seized. A trial resulted in a verdict for defendant. Subsequently plaintiff moved for a new trial, and one of the grounds of such motion was errors of law occurring at the trial and excepted to by plaintiff. The Court granted the motion, and the order stated: "The same is hereby granted upon the sole ground of error in law occurring at the trial in admitting in evidence, over the objection of plaintiff's counsel, certain testimony as to statements made by O. S. Sletto and O. S. Paulson with reference to the ownership of the stock in question." From this order defendant appeals. To understand the full force of the ruling, it will be necessary to state some facts. The plaintiff corporation received its charter about October 25, 1894. At that time, and for more than a year prior thereto, O. S. Sletto had been conducting a general merchandise business in the City of East Grand Forks, in the State of Minnesota. Commencing on September 10, 1894, and at various dates from that time to October 25th, large quantities of goods were shipped by O. S. Sletto from East Grand Forks, billed to himself at Reynolds. On October 9th and 24th, and on November 2nd and 5th, small shipments were made from East Grand Forks by O. S. Sletto to O. S. Paulson at Reynolds and during the month of October some shipments of goods from wholesale houses were received at Reynolds, billed to O. S. Sletto. All goods received at Reynolds billed to Sletto were taken

by O. S. Paulson, and receipted for by him in Sletto's name, and were placed in a storeroom in Reynolds, and constituted practically the stock of goods that was seized by defendant. These goods were being sold at retail. Until about November 1st the business was conducted in the name of O. S. Paulson, and was in his personal charge. After that date it was conducted in the name of the O. S. Paulson Mercantile Company; O. S. Paulson as president and general manager, continuing in charge. On October 31, 1894, O. S. Sletto executed to O. S. Paulson, for the stated consideration of $3,500, a bill of sale of goods in the store at Reynolds. On the same date, for the expressed consideration of $565, Sletto executed a bill of sale to the O. S. Paulson Mercantile Company of certain other goods in said store. The bills of sale were filed for record November 5, 1894, and at the same time there was filed a bill of sale from O. S. Paulson to O. S. Paulson Mercantile Company, covering same goods, for the expressed consideration of $5,000. It was defendant's contention that the sale from Sletto to Paulson was fraudulent and collusive, and made for the sole purpose of defrauding Sletto's creditors, and the organization of the corporation by Paulson was but a part of the scheme by which they hoped to introduce a third party, who might figure as an innocent purchaser of the goods. On the 6th day of November—the day following the recording of the bills of sale—one Neisser, who was the traveling salesman of A. L. Shakeman & Co., the plaintiff in the attachment suit, appeared at East Grand Forks for the purpose of ascertaining Sletto's financial condition and collecting the bill due his firm. One Fried, another traveling salesman, was with him. The depositions of these parties were taken by defendant, and introduced over plaintiff's objection. They testified that Sletto told them on that day that he owned the goods at Reynolds, and that again, and in Paulson's presence, he made the same statement, and that Paulson stated that Sletto owned the goods, and that he (Paulson) was simply in there to help Sletto out. It was upon the introduction of this testimony that the court based its order for a new trial.

We think the order must be sustained, upon the ground that the statements of Sletto, the vendor, made in the absence of the vendee, and tending to defeat the title, were improprly admitted. The general rule which excludes the statements of a vendor, not in possession, and which tend to defeat the title of his vendee, is well established. But the rule has its exceptions. After proof has been introduced to show a fraudulent combination on the part of the vendor and the vendee to defraud the creditors of the vendor, then the statements of the vendor, in the absence of the vendee, tending to defeat the title of the vendee, may be introduced. *Hartman* v. *Diller*, 62 Pa. St. 37; *Pier* v. *Duff*, 63 Pa. St. 59; *Cuyler* v. *McCartney*, 33 Barb. 165; *Boyd* v. *Jones*, 60 Mo. 454; *Hutchings* v. *Castle*, 48 Cal. 152. Just how far this precedent proof must go is not clear, under the authorities. In *Pier* v. *Duff* the Supreme Court of Pennsylvania said: "There is no doubt that if there be any, even very

slight, evidence of complicity between the grantor and grantee in a design to defraud creditors, the declarations of one are admissible against the other, although made after the date of the grant." While in *Boyd* v. *Jones* the Court said: "But in such case the common design and undertaking must first be proved by evidence aliunde, before his declarations are admissible." If, in these cases, the Court acted upon different rules as to the quantum of precedent proof, we are not in this case required to decide between them. If O. S. Paulson, Sletto's grantee, were seeking to recover the value of the goods in question, the point presented would be very close, under the Pennsylvania authorities. But the plaintiff is the grantee of Sletto's grantee, and at the time Sletto's declarations were received in evidence there was no proof whatever tending to connect plaintiff with any fraudulent combination to defraud Sletto's creditors; hence the declarations should have been excluded. The order granting a new trial must be sustained by reason of the admission of these declarations of O. S. Sletto, but, as the same questions will necessarily arise upon another trial, it becomes necessary to notice the other points upon which the Court based its order for a new trial.

Certain statements were received in evidence that were made by O. S. Sletto after he had executed a bill of sale of the goods in question to O. S. Paulson, and after O. S. Paulson had executed a bill of sale for the same goods to the O. S. Paulson Mercantile Company, the plaintiff herein. Such statements were made in the presence of O. S. Paulson, and were made to the agent of A. L. Shakeman & Co., to whom Sletto was indebted in a large amount, and the agent was seeking to ascertain the extent of Sletto's responsibility. We must treat these declarations as made in the presence of the corporation plaintiff. O. S. Paulson was at that time president and general manager of such corporation, and as such he was in possession of the stock of goods at Reynolds, and controlled the sale and disposition thereof, and the conduct of the business, as entirely as when it was conducted in the name of O. S. Paulson. Under these circumstances, and in the presence of Paulson, Sletto stated that he was the owner of the stock of goods at Reynolds. In this Paulson, by his silence, acquiesced. If it were true that the plaintiff owned the stock, the circumstances made it peculiarly incumbent upon Paulson to then and there so declare. If the plaintiff owned such stock of goods, an obligation rested upon Paulson, under the circumstances disclosed, to so declare in response to Sletto's statement, and he violated every rule of duty and courtesy by not so doing, and the only reasonable inference to be drawn from his silence is an admission by him, for the corporation, of the truth of the statement. In *Drury* v. *Hervey*, 126 Mass. 519, it is said that the whole rule turns on the presence or absence of the conditions just enumerated. Here the conditions were all present, and, if Paulson himself were plaintiff, the application of the rule could not be questioned. But corporations, by the silence of those who should speak for them, may make admissions as well as individuals. We

know of no rule of law giving corporations immunity in this direction. We do not hold that such admissions are conclusive. They do not work by way of estoppel, but they are competent evidence in the case. Such was the holding in *Williams* v. *College,* 29 Mo. 250. The statements of Sletto made in Paulson's presence were, under the circumstances of this case, properly admitted in evidence.

There remain yet the statements made by Paulson himself. They were made on the same day, to the same party. Paulson knew who the party was and what his business was. It would not be possible for a corporation to clothe an officer with more power than the record shows Paulson had in this case. He stated, according to the witness, that Sletto owned the stock at Reynolds, and that he (Paulson) was in there simply to help Sletto out. In his Commentaries on Corporations, Mr. Thompson thus states the rule at section 4914: "It is merely to state the same rule a little differently to say that declarations made by the officers or agents of corporations, while acting in the course of their official duties or of the business of their agency, with reference to the then existing state of affairs, are admissible in evidence as part of the res gestae." He cites abundant authority for the proposition. The statements made by the president related to a business of which he then had exclusive charge, and referred to the then existing state of affairs. That they were properly received in evidence we have no doubt; but, for the reason already stated, the order of the Court granting a new trial is affirmed. All concur.