Henry Susemiehl, Administrator of Estate of Walter Susemiehl, Deceased, Appellee, v. Red River Lumber Company, Appellant, and Walter Gehrke, Appellee.

Gen. No. 9,552.

Opinion filed August 8, 1940.

CASSELS, POTTER & BENTLEY, of Chicago, for appellant; RALPH F. POTTER and KENNETH B. HAWKINS, of Chicago, of counsel.

SEARS, O'BRIEN and STREIT, of Aurora, for appellee; BARNABAS F. SEARS and WILLIAM C. O'BRIEN, of counsel.

Mr. Presiding Justice Wolfe delivered the opinion of the court.

An action in tort was filed in the circuit court of Kane county by the administrator of the estate of Walter Susemiehl, deceased, for damages for the wrongful death of plaintiff's intestate, as a result of a head-on collision between two automobiles about eight o'clock on the night of September 7, 1938, on U. S. Route 30, a mile or more south of the city limits of Aurora, Illinois. The suit was brought against the Red River Lumber Company, a Minnesota corporation authorized to do business in Illinois, and Walter Gehrke, a salesman residing in Elmhurst, DuPage county, who owned the Buick automobile which collided with the Dodge automobile owned and operated by Walter Susemiehl.

The complaint consists of two counts. The first count charges both the defendants with driving and operating the southbound Buick car in a negligent, careless, wrongful and improper manner, and by reason whereof the Buick car ran into the automobile of the plaintiff's intestate, which resulted in injuries from which he died on October 31, 1938; that the plaintiff's intestate was in the exercise of due care and caution for his own safety; that he left him surviving a father, mother and two sisters. The second count charges both of the defendants were negligently driving the Buick car in excess of 50 miles per hour; that they failed to decrease the speed on the wet and slippery roadway, and failed to keep a proper lookout for the automobile of the plaintiff's intestate approaching from the opposite direction. The plaintiff asks damages in the sum of $10,000.

The defendants by their respective attorneys filed separate appearances and answers. The Red River Lumber Company specifically denied it was driving and operating the Buick, denied that Walter Gehrke at the time and place was the agent or servant of the defendant, the Red River Lumber Company, acting in the

course and scope of his employment, denied that Walter Gehrke was on any business connected with the Red River Lumber Company, denied that the Buick car was owned by or operated and controlled by the Red River Lumber Company, or by any servant or agent of it then and there acting in the course and scope of his employment, denied any negligence on its part, and denied due care on the part of the plaintiff's intestate. The answer of the Red River Lumber Company to the second count was in all respects similar to its answer to the first count.

Walter Gehrke in answer to the first count denied he was driving and operating the Buick, and stated that Harold V. Watts was driving and operating the Buick at the time and place mentioned in the complaint. He denied that plaintiff's intestate was in the exercise of due care and caution for his own safety, denied that he (Gehrke), negligently, carelessly and improperly drove and operated the automobile. The answer of Walter Gehrke to the second count made similar denials to each of the allegations therein.

The case was tried before a jury who found the issues in favor of the plaintiff and assessed damages against each of the defendants in the sum of $6,200. Each of the defendants filed written motions for judgment notwithstanding the verdict, which was overruled. Each of the defendants then filed motions for a new trial, and the same were overruled. The court then entered judgment on the verdict against Walter Gehrke and the Red River Lumber Company for the amount of $6,200. It is from this judgment that the Red River Lumber Company has prosecuted and perfected an appeal to this court. Walter Gehrke has not joined in the appeal, nor has he filed a cross appeal or assigned cross errors.

It is first insisted by the appellant that the verdict of the jury and judgment of the court is contrary to, and not supported by the evidence in the case. From

a review of the evidence it discloses, that after the accident plaintiff's intestate car, which had been traveling north on a hard paved road, was found to be with its right wheels off of the pavement for a distance of approximately 2 feet; that the car owned by the defendant, Walter Gehrke, was standing with its left front wheel off of the pavement and left rear wheel off, or very close to the edge on the east side of the pavement; that the cars had collided and were locked together and had to be pulled apart by two tow trucks; that it had been raining before the accident occurred, and the pavement was slippery; that the tracks of the Dodge car driven by plaintiff's intestate showed that he had driven a distance of 20 to 25 feet with the right wheels of his car off of, or to the right of the pavement as he was going north. The attorneys for appellant and appellee differ widely about the skid marks made by the Buick car, but the evidence as abstracted, shows that the skid marks started 55 or 60 feet north of where the cars stood after the collision, and they started approximately 4 feet east of the black line in the center of the pavement and continued to the rear wheels of the Buick car. While the witnesses differ somewhat in minor details as to where the cars were after the accident, it seems to us that there is no question but that plaintiff's intestate car, at the time of the collision, was being driven on the right side, or in the proper lane of traffic, and that the defendant, Walter Gehrke's car was being driven on the wrong side of the road. There was no eyewitness to the accident that was competent to testify. Without objection, plaintiff showed that the deceased, Walter Susemiehl, was a careful driver. We think the evidence clearly sustains the verdict of the jury that at the time of the accident, the driver of the defendant's car was guilty of negligence, that was the proximate cause of the collision and that the plaintiff's intestate was in the exercise of due care and caution for his own safety.

It is next insisted by the appellant that, ''Walter Gehrke was not an agent or servant of the Red River Lumber Company at the time and place of the accident and was not acting in the scope of any employment for the Red River Lumber Company, but was an independent contractor or on a frolic of his own,'' and that, ''The Court committed reversible error in permitting the plaintiff to introduce in evidence the report of the accident made by J. P. Rinn and mailed to the Hartford Accident & Indemnity Company which issued a policy of workmen's compensation insurance to the Red River Lumber Company.'' The plaintiff introduced in evidence Exhibit No. 6, which is a report made out by Mr. J. P. Rinn, the managing officer of the Red River Lumber Company, to the Hartford Accident & Indemnity Company, stating that their employee, Walter Gehrke, had been injured and the report was made for the purpose of claiming compensation for such injuries. The report is made upon the regular standard form for employer's first report of injury to the claim department of Hartford Accident & Indemnity Company. The first 17 questions relate to the business of the company, the name of the injured parties and are of a general nature. The seventeenth question states that Walter Gehrke had been employed by the Red River Lumber Company for 12 years; that he worked 6 days a week with an average weekly earning of $64.61; that the machine or tool, or thing causing his injury was an automobile. Question 24, is as follows: ''Describe fully how the accident occurred, and state what the employee was doing when injured. (A) Head-on automobile collision while employee was driving his car on regular company business. . . . ''Question No. 27, probable length of disability, two months.'' At the time this exhibit was offered, Mr. Hawkins, the attorney for the Red River Lumber Company, made the following objection: ''Let the record show that I object to the admission of the evidence of the answer

typed on Exhibit 6, to questions No. 24 and 27, on the ground that they are merely conclusions of the witness, but not based on his own knowledge, but hearsay.'' If the court properly admitted this exhibit, then there is evidence to sustain the verdict in that Walter Gehrke was an agent or servant of the Red River Lumber Company at the time and place of the accident, and was acting in the course and scope of the employment of said company.

This exhibit was admitted on the theory that it was an admission by the defendant company as against their interest, and that such is competent evidence, for the jury to consider. In the early case of *Chicago, B. & Q. R. Co. v. Coleman*, 18 Ill. 297, the Supreme Court of our State, in considering the question of when a corporation is bound by the admission of its officers, uses this language: ''They have become numerous, and their operations extend into almost every enterprise of the country, demanding such powers and facilities, within their sphere of action, as belong to natural persons in the prosecution of the like enterprises; and being intangible and invisible beings, created by the law, they can exercise them through natural persons only. Unless they may be bound, in the ordinary affairs of the corporation, by the acts and admissions of their officers, so far as relates to the business usually transacted through such officers, they would enjoy an immunity incompatible with the rights of individuals, and destructive of the object of their creation. The president of a railroad corporation is treated by common usage as its head—an officer *within* and a *part of* the corporation, a mere artificial person, incapable itself of acting or speaking—and admissions of such officer, made in the execution of the duties imposed upon him, and concerning a matter upon which he is called upon to act, and which matter is within the scope of the authority usually exercised by him, are evidence against the corporation.''

In the case of *Masonic Temple Safety Deposit Co. v. Langfelt,* 117 Ill. App. 652, the plaintiff sought to recover money stolen from the plaintiff's safety deposit box in defendant's vault by reason of the defendant's negligence. The plaintiff offered in evidence a letter written by the president of the defendant company in which he stated, that he had carefully examined the plaintiff's claim, and an investigation lead him to the conclusion that the plaintiffs' claim that the contents of the box had been tampered with, was correct, because other persons had access to the box by means of keys. The plaintiff offered in evidence this statement, of the president of the defendant company as an admission against their interest. The Appellate Court held that it was admission against their interest and properly admitted the statement in evidence and cited *Chicago, B. & Q. R. Co. v. Coleman, supra,* and *Lake Shore & M. S. R. Co. v. Baltimore & O. & C. R. Co.,* 149 Ill. 272.

In the case of *Scovill Mfg. Co. v. Cassidy,* 275 Ill. 462, a question of admission against interest of officers of a corporation was before the court, and the Supreme Court uses this language:

"It is strenuously argued by counsel for plaintiffs in error that Adams' and Roblin's testimony concerning Canchester's admissions as to what was due defendant in error from the Canchester Company was improperly admitted in evidence over their objections. There can be no question, under the authorities, Canchester being the president and general manager in charge of the business of the Canchester Company, that his admissions would be competent against the Canchester Company itself as to the amount owed by that Company to defendant in error, as those admissions were made in the execution of the duties imposed upon him as general manager and concerning matters which were within the scope of his authority. (*Chicago, Burlington and Quincy Railroad Co. v. Coleman,* 18

Ill. 297; *New England Ins. Co. v. Schettler*, 38 id. 166; *Lake Shore and Michigan Southern Railway Co. v. Baltimore, etc. Railroad Co.*, 149 id. 272; *Carey v. Wolff Co.*, 72 N. J. L. 510; *Paulson Mercantile Co. v. Seaver*, 8 N. D. 215.) The general rule is, that where the declarations or admissions of the principal are made in the course of the performance of the business for which the surety or guarantor is bound, they are evidence against the surety or guarantor.'' The Supreme Court of the United States in the case of *Pan American Petroleum & Transport Co. v. United States*, 273 U. S. 456, announces the same rule.

The evidence shows without contradiction, that Mr. Rinn is the active head and manager of the defendant company in the State of Illinois; that he has his office in Chicago and has been employed by the company for about 6 years; that the Red River Lumber Company is a Minnesota corporation, and is licensed to do business in Illinois; that its home office is in Westwood, California; that he, Rinn, made out the report as indicated by plaintiff's exhibit 6; that he has charge of making out reports of accidents to any of the employees or anybody connected with the Red River Lumber Company, and when any accident or anything is reported to him, it is his business to report all accidents to the Insurance Company. This evidence shows that Mr. Rinn, in making out the report, represented the defendant, the Red River Lumber Company, as their officer and agent, and the report was made out in the regular course of business.

It is seriously contended that it was error for the court to admit this exhibit because the same was made out not on the personal knowledge of Mr. Rinn, but on hearsay, and therefore not binding as an admission against interest of the defendant, the Red River Lumber Company. In the case of *Little Fay Oil Co. v. Stanley*, 90 Okla. 265, 217 Pac. 377, the plaintiff, Stanley, claimed he was injured in the course of employment

and brought suit under the Compensation Act. An award was allowed, and the case came before the Supreme Court. The respondent claims that there was no evidence to support the award, the company claiming that Stanley was not an employee, but that of one Miller an individual contractor. Upon the hearing the plaintiff offered in evidence a report filed with the Industrial Commission by the Oil Company 10 days after the accident, in which report it was stated, that the plaintiff was an employee on the day he was injured, in the course of employment, and that he had been employed by them one day as a timeworker at $14 per day. The Oil Company claimed this report was made through a misapprehension of fact by an officer of the company at Tulsa who acted upon the information received over the telephone, and this office was under a misapprehension of the facts and therefore the admission should not have been admitted as admission against interest. The court, in their opinion, uses this language: "The fact that the statements contained in the report of the employer were made by a person who did not have personal knowledge of the facts did not render the admission made in the report incompetent as evidence, but simply went to the weight to be given the admission as evidence." *Sparr & Green v. Wellman,* 11 Mo. 230.

"An admission is the statement of a fact against the interest of a party making it—but it is not essential to constitute it an admission, that the fact should have come under the personal observation of the declarant. Undoubtedly admissions of the latter kind are much stronger than where the declaration is of a fact, of which the party could have no personal knowledge. But where a party believes a fact upon evidence sufficient to convince him of its existence, his declaration of the existence of that fact, if against his interest, is evidence against him." Jones on Evidence, section 296; Wigmore, Second Edition, section 1053; *Ayers v.*

*Metcalf,* 39 Ill. 307; *In re Irvine's Estate,* 102 Cal. 606, 36 Pac. 1013.

In the case of *Kitchen v. Robbins,* 29 Ga. 713, it is stated: "Are no admissions good against a party, unless founded on his personal knowledge? The admissions would not be made except on evidence which satisfies the party who is making them against his own interest, that they are *true,* and that is evidence to the jury that they are true. Admissions do not come in, on the ground that the party making them is speaking from his personal knowledge, but upon the ground that a party will not make admissions against himself unless they are *true.* The fact that he makes them against his interest, can be reasonably explained only on the supposition that he is constrained to do so by the force of the evidence. The source from which a knowledge of the facts is derived, is a circumstance for the jury to consider, in estimating the value of the evidence, but that is all." *Reed v. McCord,* 160 N. Y. 330, 54 N. E. 737.

In the case of *Stump v. Dudley,* 285 Ill. 46, our Supreme Court was considering the admissibility of a statement of the defendant which the plaintiff claimed was admission against interest, and passing upon the question the court uses this language:

"The sole contention made is that the only evidence supporting the finding of fact of the Appellate Court was improperly admitted. On the trial in the county court plaintiff in error was called as a witness by defendants in error. On the trial in the circuit court the stenographer who took the testimony in the county court was called as a witness by the defendants in error and testified to the testimony given by plaintiff in error upon the trial in the county court with reference to the circumstances under which the note was executed and delivered by the deceased to the plaintiff in error. Plaintiff in error contends that this testimony was improperly admitted. No objection was made when the

testimony was offered, either as to its competency or as to the form of the questions propounded to the witness. After the testimony of this witness had been concluded plaintiff in error moved to strike it, which motion was denied. The plaintiff in error was a party, and it was competent for defendants in error, on the trial, to prove any statements made by her at any time which were in any time which were in the form of admissions as to the consideration for the note or as to the circumstances under which it was executed and delivered. The proof of such admissions is not subject to the objection that it is hearsay where the statements are those made by a party to the suit and are offered as evidence by his adversary. Admissions of a party to a suit are always competent and admissible when offered by the opposite party.''

From a review of all of the cases cited by the appellant and appellee, it is our conclusion that the court properly admitted in evidence plaintiff's exhibit 6, as an admission against interest of the defendant, the Red River Lumber Company. This was an admission that the defendant, Walter Gehrke, at the time of the accident in question was an employee and agent of the defendant company, and was driving his car on regular company business at the time it collided with the car of the plaintiff's intestate.

It is next insisted that the court erred in giving to the jury plaintiff's Instructions No. 3 and 9. We have heretofore stated that there was sufficient evidence for the jury to base their verdict on the fact that Walter Gehrke was the agent and servant of the defendant, the Red River Lumber Company, and at the time he was driving the car was using it on the company's business, therefore the Instructions No. 3 and 9 were proper, and there is evidence in the record on which to base them.

Complaint is also made that the court erred in refusing to give Instruction No. 1, tendered by the Red River

Lumber Company. This instruction informed the jury that the skidding of defendant's car did not of itself constitute negligence, but is merely a circumstance to be considered by the jury in determining whether or not the skidding contributed to the accident complained of. We think this instruction was properly refused. It singles out certain specific things, namely, the skidding of the defendant's car. It directs a verdict of not guilty. The skidding may have been only an incident to the damage done to the plaintiff's intestate car. We think the language used by Judge JETT in the case of *Peters v. Madigan,* 262 Ill. App. 417 aptly applies to this instruction. ''This instruction is bad, because it told the jury what amounted to negligence which was a question for the jury to determine. The instruction clearly invades the province of the jury. . . . The instruction calls attention to particular facts in the testimony on one side and omits any reference to certain facts shown on the part of the plaintiff.''

It is insisted by the appellant that the damages assessed by the jury are excessive. The pecuniary loss to the near relatives of a deceased person, is somewhat speculative. The man may have lived a long and useful life and may have died of natural causes in a short time after the time of the accident if he had not been injured. Under the circumstances as shown by the evidence in this case, we cannot say that the verdict of the jury and the judgment of the court is excessive.

The judgment of the trial court will be affirmed.

*Affirmed.*