Grace C. POPE, Executrix of the Will of Reese Pope, deceased, Plaintiff in Error,

v.

I. J. (Irving) VERNON, Defendant in Error.

No. 39685.

Supreme Court of Oklahoma.

Jan. 22, 1963.

Rehearing Denied June 4, 1963.

Ferd P. Snider, Muskogee and Francis Stewart, Oklahoma City, for plaintiff in error.

Boatman, Pugsley & Boatman, Okmulgee, for defendant in error.

BERRY, Justice.

The parties, who appear here in the same relative position as in the trial court, will

be referred to herein as they appeared in said court.

Reese Pope died testate April 20, 1955. His Will was offered and accepted for probate in Muskogee County, Oklahoma. Plaintiff, who was Mr. Pope's spouse, was appointed and qualified as Executrix of the estate.

For several years preceding Mr. Pope's death he and defendant, under oral partnership agreements, owned and jointly engaged in operating seven properties or businesses. These were (a) Eufaula gin; (b) Checotah gin; (c) Beggs ice plant; (d) Haskell ice plant; (e) Okmulgee pecan plant; (f) hotel property; (g) residence buildings. For reasons hereafter stated there is no controversy concerning the two last mentioned properties.

On March 20, 1957, plaintiff caused the instant action to be instituted. In so far as material, she alleged in her petition that upon Mr. Pope's death defendant, as surviving partner, was charged with the duty of promptly liquidating the partnership and accounting to plaintiff; that defendant was under a duty to submit to plaintiff a full and complete inventory covering each of the partnership properties; that repeated demands for an inventory and appraisal were made by plaintiff but none was furnished to her; that following Mr. Pope's death defendant was under a duty to dispose of the partnership property without delay; that defendant failed to do so; that the properties could have been sold as going concerns at a price which would have returned to Mr. Pope's estate a "large sum of money"; that an accounting would show defendant was indebted to the estate in the approximate sum of $25,000.00. Plaintiff prayed that a receiver be appointed to take charge of the partnership properties and liquidate them; that defendant be required to account to plaintiff.

In his answer and cross-petition defendant alleged that he had "endeavored since the death of Reese Pope to sell the partnership properties at a fair price but was unable to do so"; that defendant specifically denied that all of the property could have been sold as going concerns; that the pecan plant and Beggs ice plant "had been closed down prior to" Mr. Pope's death. Defendant prayed that plaintiff's request for appointment of a receiver be denied; that the court direct that the partnership be sold at public sale; that following sale an accounting be had.

In May, 1958, defendant presented to plaintiff an account purporting to show status of properties of the partnership as of April 20, 1955 and January 9, 1958, which showed that as of either date Mr. Pope's liabilities exceeded the value of his interest in the partnership properties.

Prior to trial defendant negotiated a sale of the residence and hotel properties at a price agreeable to plaintiff. From these sales the estate received a profit.

A very short time after Mr. Pope's death, defendant negotiated a sale of the Beggs ice plant but due to title defects the same was never consummated. At the trial plaintiff's counsel stated in substance that no complaint was made as to this property.

The parties agreed prior to trial that the remaining properties be sold at public auction and that defendant was privileged to bid at the sale. Thereafter an order was entered in accordance with the agreement, which order was complied with.

Following trial of case to the court, the court in effect found and held for defendant. From order denying plaintiff's motion for new trial which was directed to judgment for defendant, plaintiff perfected this appeal.

Pursuant to plaintiff's request, the trial court made findings of fact and conclusions of law. In so far as material, the court found that upon Mr. Pope's death exclusive control and possession of the partnership properties vested in defendant who retained possession and control of same until same were sold; that as of date of Mr. Pope's death none of the businesses was "going, profitable" concerns; that the pecan plant had been closed down; that "by the very

nature of the other four enterprises, cotton gins and ice plants, they were of diminishing demand in reference to both operation and sale"; that defendant attempted for a short time to operate some of the businesses believing that same could be sold for more as going concerns; that the operation resulted in losses; that in delaying liquidation of the assets of the partnership, defendant "acted in good faith and was thoroughly justified in his delay"; that plaintiff voiced no protest to the delay; that in August, 1955, defendant and plaintiff's son caused to be made a full inventory of the partnership properties and an appraisal of same; that the inventory and appraisal were not made pursuant to the provisions of 58 O.S.1951, Sec. 255 pertaining to an inventory by a surviving partner but other provisions of the Probate Code; that in an effort to keep the partnership enterprises in operation, defendant expended certain sums as taxes and operating expenses; that such expenditures "were properly charged in (defendant's) partnership accounting"; that the properties were sold under and pursuant to order of the court; that sale of the properties resulted in the following deficits: Eufaula gin, $5,004.54; Checotah gin, $2,860.52; ice plants, $3,895.64; pecan plant, $12,500.00; that one-half said deficits were chargeable to the estate; that defendant announced in open court that he did not seek judgment against the estate for said deficit; that defendant was, however, entitled to recover $2,000.00 from the estate as a fee for his attorneys. By way of conclusion, the court found thusly:

"The Court concludes that the plaintiff is not entitled to recover judgment herein against the defendant; that the defendant has made a true and proper accounting of the partnership affairs and the liquidation of the partnership; that he did in the liquidation of the partnership act at all times in good faith and that his delay in the liquidation thereof was without protest on the part of the plaintiff and with the consent or implied consent of the plaintiff; that he should not be in his accounting

surcharged for any asserted loss or depreciation in any of the Five properties above listed after the death of Pope Reese, nor should his accounting be confined to the values of the Five properties shown in the informal appraisement herein as Exhibit 1 in the evidence."

The court concluded that plaintiff was not entitled to judgment against defendant but defendant was entitled to judgment in the amount of $2,000.00 as a fee for his attorney, and judgment was accordingly rendered.

Plaintiff contends that since there was no agreement nor order of a court that the partnership should extend beyond the death of Mr. Pope, defendant as trustee of Mr. Pope was under a duty to promptly furnish the latter's estate with an inventory and appraisal of the property, settle the affairs of the partnership and account to the estate. In support of this contention, plaintiff cites Taliaferro et al. v. Reirdon et al., 191 Okl. 43, 126 P.2d 696, and Taliaferro et al. v. Reirdon, 197 Okl. 55, 168 P.2d 292.

Plaintiff points out that following her husband's death she, by letter, called to defendant's attention his duties under the statute; that she never interfered with defendant's operation of the businesses that were operated; did not participate in operating same and received no operating income from the businesses. The plaintiff concludes that it is thusly apparent that the trial court erred in charging the estate with operation expenses incident to operating the businesses that were operated.

Operation of the Checotah gin resulted in a profit of $4,620.25. Operation of the other properties that were operated resulted in a loss of $7,003.53. The net operating loss was approximately $2,383.27. The aggregate deficit as found by the trial court was in excess of $24,000.00. Therefore, this alleged error is only of significance if the fair market value of the properties as of date of Mr. Pope's death was some $20,-000.00 or more than the price received on sale thereof under order of the court.

Plaintiff offered no evidence as to the value of the properties at any time. She, however, asserts that the value of same was fixed by the inventory and appraisal made by her son and defendant which has heretofore been referred to; that it is her privilege to elect to have the accounting based upon the values set forth in the inventory. In support of her contention plaintiff cites 54 O.S.1951, Sec. 54, and 58 O.S.1951, Sec. 255, supra. She stresses the last cited statute which reads as follows:

"When a partnership exists between the decedent, at the time of his death, and any other person, the surviving partner shall immediately, in company with the executor or administrator, or some other person or persons, to be appointed by the judge of the county court, take and furnish to said executor or administrator a correct and full inventory, and a fair and just appraisement, of all partnership property and assets held and belonging to himself and the deceased partner, after which the surviving partner shall settle the business of the co-partnership. The surviving partner shall settle the affairs of the partnership without delay, and account with the executor or administrator, and pay over such balances as may from time to time be payable to such executor or administrator in the right of the decedent. Upon the application of the executor or administrator, the judge of the county court shall in all cases require the surviving partner to give a good and sufficient bond, to be approved by the judge of the county court, for the honest and faithful disposal of the interest of the decedent in the co-partnership, and the prompt payment of the proceeds thereof over to the executor or administrator, and in case of neglect or refusal may, after notice, compel it by attachment; and the executor or administrator may maintain against him any action which the decedent could have maintained."

As pointed out, the trial court found that the appraisal and inventory were not made pursuant to the provisions of the above quoted statute. This finding accords with defendant's testimony to the effect that the mentioned action was taken in connection with preparing an inventory and appraisal for probate purposes and not in an effort to comply with the provisions of Sec. 255, supra; that the figures as to gross value of the properties were supplied by plaintiff's son; that defendant did not agree that same were correct and so advised the son; that defendant stated that in his opinion the gross value of the properties was overstated in the appraisal; that the son insisted upon such values for probate purposes; that against his better judgment he (defendant) acquiesced.

We are of the opinion that it was defendant's privilege to offer evidence showing the net value of the properties as of date of Mr. Pope's death. This he did. This evidence shows that as of said date Mr. Pope's indebtedness to defendant and his portion of the partnership's indebtedness to others, exceeded the value of his interest at all relevant times in the partnership properties. The only evidence that would tend to refute such proof is the gross value that was used in the inventory and appraisal that were made by plaintiff's son and signed by him and defendant. If said gross value is accepted as the true value as of Mr. Pope's death, the value of his interest in the partnership properties would exceed liabilities properly chargeable to said interest.

Plaintiff urges that some of the liabilities were barred by applicable statute of limitations. As a general rule one seeking equity must offer to do equity. At p. 671, § 38a(6), 1 C.J.S. Accounting, this is said:

"An offer to do equity, by averring plaintiff's willingness to pay any balance that might be found due defendant from him, was formerly a requisite to a bill in equity for an accounting; but it

is now the general rule that the mere filing of the bill implies an offer to pay such balance to defendant, without a specific averment to that effect, * * *."

Moreover, defendant was privileged to set off Mr. Pope's indebtedness to him. See 12 O.S.1961, Sec. 273; Barry v. Hubbard, 195 Okl. 112, 155 P.2d 512, and case cited following ■■■ Vol. 9A, Limitation of Actions, West's Okl.Dig.

■ Plaintiff makes the further contention that "The judgment against the executrix for the attorney's fees was unwarranted, for that the attorney represented the personal interests of the defendant, not the partnership, penalized the executrix for doing what the County Court required her to do, and was without substantial evidence to support it."

The evidence shows that the services of the attorney for which the fee was allowed, were rendered in connection with defending the instant action, preparing notices concerning the public sales of property sold under order of the court, acting as auctioneer at such sales, and preparing motions to confirm and orders confirming the sale. A disinterested attorney testified that the value of services rendered by the attorney was from $1,500.00 to $2,000.00. There is no evidence to the contrary.

For reasons stated, the attorney fee was apparently allowed as a part of the cost of this case. By force of statute, 12 O.S.1961, Sec. 930, discretion rests in the trial court to apportion costs in a case of equitable cognizance but may, in a proper case, tax costs to the party who does not prevail.

Plaintiff argues that the fee was based upon services rendered the partnership and should therefore have been charged one-half to defendant and the remainder to plaintiff. Mr. Pope's death served to dissolve the partnership. The services performed by the attorney related to and were occasioned by plaintiff instituting the instant action. Therefore, to our way of thinking the matter of taxing the fee to

plaintiff did not, under the facts, constitute an abuse of discretion on the court's part. We add, that plaintiff has cited no authority to the effect that costs in the nature of an attorney's fee cannot properly be taxed to an estate in a case such as this.

Plaintiff urges that the questions propounded to the attorney-witness did not sufficiently enumerate the services rendered by defendant's attorney for whom a fee was sought. While it is true that the nature and extent of the work done by defendant's attorney was summarized in a general way, in the questions propounded to the attorney-witness on direct examination the record tends to show that counsel for plaintiff was familiar with, as was the court, said matter. Therefore, plaintiff's counsel was in a position to intelligently cross-examine the attorney-witness.

For reasons stated, the judgment of the trial court is affirmed.

BLACKBIRD, C. J., HALLEY, V. C. J., and DAVISON, JOHNSON, WILLIAMS, JACKSON and IRWIN, JJ., concur.